IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX MCLACHLAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 05-164 Erie |

**MEMORANDUM OPINION**

McLAUGHLIN, J.

      Plaintiff, Alex M. McLachlan, (hereinafter "Plaintiff" or "McLachlan"), commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* and § 1381 *et seq.* McLachlan filed applications for DIB and SSI on March 10, 2003, alleging that he was disabled due to a back injury and depression as of October 18, 2001 (Administrative Record, hereinafter "AR", 57-59; 72; 271-273).[1] His applications were denied, and he requested a hearing before an administrative law judge ("ALJ") (AR 44-48; 275-278). Following a hearing held April 22, 2004, the ALJ found that McLachlan was not entitled to a period of disability or disability insurance, and was not eligible for SSI benefits (AR 19). McLachlan's request for review by the Appeals Council was denied (AR 5-7), rendering the Commissioner's decision final under 42 U.S.C. § 405(g). The instant action challenges the ALJ's decision. Presently pending before the Court are cross-motions for summary judgment. For the reasons that follow, we will deny the Plaintiff's motion and grant the Defendant's motion.

---

[1] McLachlan filed applications for DIB and SSI in November 2001 alleging disability due solely to a back injury (AR 31-32). On January 31, 2003, an ALJ concluded that he was not disabled (AR 31-38). McLachlan did not seek judicial review of the decision.

1

## I. BACKGROUND

McLachlan was born on February 13, 1962, and was forty-two years old on the date of the ALJ's decision (AR 13; 57). He is a high school graduate, with past work experience as an employee and owner-operator of a pest control business and an assistant section leader (AR 13; 73). McLachlan concedes that the findings of the ALJ with respect to his physical impairments are supported by substantial evidence. *Plaintiff's Brief* p. 2. Therefore, our discussion will focus on the medical evidence with respect to his alleged mental impairments.

While undergoing an evaluation for lumbar pain at the Pain Management Center on March 6, 2003, McLachlan reported feelings of depression without suicidal ideation, extreme frustration in dealing with his girlfriend's children, and anger (AR 176).

On May 7, 2003, McLachlan reported depression and anger control issues to Merja Wright, M.D., his family physician (AR 263). He claimed he lashed out, punched walls, and locked himself into a room (AR 263). Although he attended counseling, he requested a psychiatric referral (AR 152, 263).

McLachlan underwent a psychological disability evaluation performed by Glenn Thompson, Ph.D., on May 17, 2003 pursuant to the request of the Commissioner (AR 208-216). Dr. Thompson reported that McLachlan was quite pleasant, cooperative, engaging, an excellent historian, and volunteered a great deal of information relevant to the evaluation process (AR 208). McLachlan reported depression since 1999 when his marriage ended and increased depression following a car accident in August 2001 (AR 209).

On mental status examination, McLachlan maintained effective eye contact, was not anxious during the interview, and had normal speech (AR 211). Dr. Thompson found his affective expression as depressed and angry (AR 212). McLachlan denied rapid mood changes, hallucinations, delusions or suicidal ideations (AR 212). He was active during the interview with many illustrations, examples or enhancements to direct questions, which sometimes took the form of flights of ideas with a great deal of spontaneity (AR 212). His responses to questions were adequate and goal-directed, although not always directly relevant (AR 212). There were no loose associations and he was not tangential or distractible (AR 212). Dr. Thompson found his fund of information to be quite adequate (AR 213). McLachlan evidenced being "quite stressed"

during serial 7 subtraction, but was able to perform serial 3 subtraction without difficulty (AR 213). His memory was below average (AR 214). Dr. Thompson stated that impulse control was a "big problem" for McLachlan, in that he spent days in his room and came out only for appointments (AR 214). McLachlan gave two incidents which were merely representative of several loses of control, and the necessity of effort to maintain control in situations involving road rage (AR 214). His judgement was quite good regarding efforts to avoid road rage opportunities, and his response to imaginary situations was very adequate (AR 214).

Dr. Thompson diagnosed McLachlan with major depression, recurrent, moderate, and intermittent explosive disorder (AR 214). Dr. Thompson opined that McLachlan's mental impairments would result in a "fair" or "good" ability to perform many work-related activities, but found he had a "poor" ability to interact with supervisors; deal with work stresses; remember, understand, and carry out complex, detailed or simple instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability (AR 215-216). Dr. Thompson indicated that he evaluated McLachlan as "poor" in the above areas due to his emotional factors (AR 216). He further indicated that his intellectual abilities and comprehension were adequate, although his thought organization was sometimes confused and his memory was below average (AR 216). Dr. Thompson opined that physical factors would play a role in his being able to carry out instructions (AR 216). He further opined that in light of his physical problems, it was unlikely that "one could expect significant improvement of foreseeable future" (AR 214). He strongly recommended regular contact with a mental health professional (AR 214).

On May 23, 2003, Richard A. Heil, Ph.D., a state agency reviewing psychologist, completed a Psychiatric Review Technique form and concluded that McLachlan had a moderate degree of limitation in his activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, with no repeated episodes of decompensation (AR 230). On the same date, Dr. Heil completed a Mental Residual Functional Capacity Assessment form (AR 217-218). Dr. Heil concluded that McLachlan was not significantly limited in his ability to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; sustain an ordinary routine; work in

3

coordination with others; make simple work-related decisions; ask simple questions; be aware of normal hazards; and travel in unfamiliar places or use public transportation (AR 217-218). He further concluded that McLachlan was only moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual; complete a normal workday and workweek without interruptions from psychologically based symptoms; interact appropriately with the general public and co-workers; accept instructions and respond appropriately to criticism from supervisors; maintain socially appropriate behavior; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (AR 217-218).

In making this assessment, Dr. Heil reviewed Dr. Thompson's evaluation and opinion, but declined to give his opinion full weight due to inconsistencies with the medical and non-medical evidence (AR 219). Dr. Heil found that Dr. Thompson's assessment revealed only a snapshot of McLachlan's functioning, and was an overestimate of the severity of his limitations (AR 219). He noted that McLachlan's basic memory processes were intact, he was able to carry out very short and simple instructions and make simple decisions, was able to maintain concentration and attention for extended periods, and although his frustration tolerance was low, he had the ability to get along with others in the workplace (AR 219). Dr. Heil opined that McLachlan was capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace (AR 219). He concluded that he was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments (AR 219).

On June 23, 2003, McLachlan attended an intake session at Stairways Behavioral Health Outpatient Clinic, and an initial psychiatric evaluation was scheduled for the following month (AR 250). On June 30, 2003, McLachlan reported to Dr. Wright that progress was being made for his psychiatric condition at Stairways (AR 261).

On July 16, 2003, McLachlan underwent an initial psychiatric evaluation performed by Sean Su, M.D., at Stairways (AR 251-253). McLachlan presented with complaints of depression, mood swings and irritability (AR 251). He complained of a dysphoric mood, insomnia, appetite

disturbances, difficulty concentrating, increased anxiety and irritability, poor energy level, anhedonia, and feelings of hopelessness, helplessness and worthlessness (AR 251). He claimed to have occasional visual and tactile hallucinations regarding spiders, and had an intense fear of spiders (AR 251). McLachlan stated that he was treated for depression by his family physician in 1999 with Celexa following his divorce which helped, but he quit taking it due to sexual side effects (AR 251). He denied any recent suicidal or homicidal ideations (AR 251). He reported a significant history of physically assaultive behavior towards others, but claimed he was now only verbally agitated (AR 251). He further reported a significant history of substance abuse, and stated that he continued to use marijuana, but "[n]ever more than once a day" (AR 252).

On mental status examination, Dr. Su found his speech coherent and goal-directed (AR 252). His mood was depressed and his affect somewhat dysphoric and anxious at times, but he exhibited no markedly bizarre or delusional thinking (AR 253). He denied any hallucinations, other than reporting a history of occasional visual and tactile hallucinations regarding spiders, and denied any obsessions or compulsions (AR 253). Dr. Su found his long-term and short-term memory was intact, he was of average intelligence, and his insight and judgment was fair (AR 253). Dr. Su diagnosed McLachlan with mood disorder, rule out major depressive disorder, and a history of polysubstance abuse (AR 253). He prescribed Lexapro, an antidepressant, and Trazodone for his insomnia, and outpatient psychiatric treatment through Stairways (AR 253). Dr. Su assessed a Global Assessment of Functioning ("GAF") score of 50 (AR 253).[2]

On September 24, 2003, McLachlan reported his sleep difficulties were being addressed with a psychiatrist (AR 258).

Progress notes from Stairways dated October 21, 2003 indicated that McLachlan had not returned to the clinic since his initial evaluation on July 16, 2003 (AR 249).

Finally, on February 18, 2004 Stairways progress notes showed that McLachlan complained of persistent depression, social withdrawal, and poor energy level on December 13,

---

[2]The GAF score considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Scores between 50 and 41 indicate "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep job)." *See Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed. 2000).

2003 (AR 248). Medication changes were made, and consistent attendance was encouraged in order to evaluate the effectiveness of his medications (AR 248).

McLachlan and Frances Kinley, a vocational expert, testified at the hearing held by the ALJ on April 22, 2004 (AR 279-305). McLachlan testified that he saw Dr. Su for medication checks and had just started therapy two weeks prior (AR 285). He took Trazodone and Wellbutrin for his mental impairments (AR 286). His medications helped with his sleeping issues, and he was "slightly better" in his ability to interact with people (AR 286; 290). McLachlan further testified that he stayed away from "the rest of the world" three to four days per week and avoided crowds since he became easily agitated (AR 294). He claimed he suffered from poor concentration and short term memory problems (AR 294).

The ALJ asked the vocational expert if work existed for an individual of McLachlan's age, education, and work history, who was limited to light work with some restrictions, and who was further limited to simple, routine, repetitive tasks with one- or two-step instructions performed in a low-stress environment, defined as work requiring few decisions, and no more than occasional contact with the public, co-workers, and supervisors (AR 300). The vocational expert testified that such an individual could perform work as a general office clerk, stock inventory clerk, and a mail clerk (AR 301). The vocational expert further testified that if such individual missed work two or more times per month on a regular basis, he would be incapable of performing competitive work (AR 303). In a post-hearing interrogatory, the vocational expert opined that a person with the limitations as set forth in Dr. Thompson's report would be unable to work (AR 115).

Following the hearing, the ALJ issued a written decision which found that McLachlan was not entitled to a period of disability, DIB or SSI within the meaning of the Social Security Act (AR 12-19). His request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 5-7). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or

considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

### III. DISCUSSION

Title II of the Social Security Act provides for the payment of disability insurance benefits to those who have contributed to the program and who have become so disabled that they are unable to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A). Title XVI of the Act establishes that SSI benefits are payable to those individuals who are similarly disabled and whose income and resources fall below designated levels. 42 U.S.C. § 1382(a). A person who does not have insured status under Title II may nevertheless receive benefits under Title XVI. *Compare* 42 U.S.C. § 423(a)(1) *with* 42 U.S.C. § 1382(a). In order to be entitled to DIB under Title II, a claimant must additionally establish that his disability existed before the expiration of his insured status. 42 U.S.C. § 423(a), (c). The ALJ found that McLachlan met the disability insured status requirements of the Act (AR 18). SSI does not have an insured status requirement.

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the

> work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117.

The ALJ resolved McLachlan's case at the fifth step. At step two, the ALJ determined, *inter alia,* that his depression and personality disorder were severe impairments, but determined at step three that he did not meet a listing (AR 14). At step four, the ALJ determined that he could not return to his past work, but retained the residual functional capacity to perform light work with some restrictions, and was limited to no more than simple, routine, repetitious tasks, with one- or two-stop instructions, performed in a low-stress environment, defined as work requiring few decisions, and more than occasional contact with the public, co-workers and supervisors (AR 15). At the final step, the ALJ determined that McLachlan could perform the jobs cited by the vocational expert at the administrative hearing (AR 17). The ALJ additionally determined that his allegations regarding his limitations were not totally credible (AR 18). Again, we must affirm this determination unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

McLachlan contends that the ALJ erred in rejecting Dr. Thompson's findings as to his functional limitations. Dr. Thompson opined that McLachlan would have a "poor" ability to interact with supervisors; deal with work stresses; remember, understand, and carry out complex, detailed or simple instructions; maintain personal appearance; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability (AR 215-216). Dr. Thompson was a consulting psychologist, having examined McLachlan pursuant to the request of the Commissioner. The treating physician rule does not apply to a consulting physician's opinion. *Mason v. Shalala*, 994 F.2d 1058, 1067 (3rd Cir. 1993) (doctrine had no application to physician who examined claimant once). Nonetheless, the Commissioner's regulations do acknowledge that, as a general principal, opinions from examining sources are given more

8

weight than opinions from non-examining sources. *See* 20 C.F.R. 416.927(d)(1). The regulations do not require however, that in every case, an examining physician's medical opinion must be favored over that of a non-examining physician. Instead, the Commissioner considers a number of competing factors, such as, *inter alia,* the extent to which the opinion is supported by a logical explanation and the extent to which the source's opinion is consistent with the entirety of the evidence. *See generally* 20 C.F.R. § 416.927(d)(1)-(6).

We find that the ALJ evaluated Dr. Thompson's opinion consistent with the above standards. The ALJ considered Dr. Thompson's opinion based upon his psychological evaluation of McLachlan, and concluded that his opinion was unsupported by the findings from his mental status examination and other evidence in the record (AR 16). The ALJ pointed to the fact that Dr. Thompson found McLachlan was an excellent historian, was socially engaging, had no impairment in communication, speech, memory or thought processes, and displayed a great deal of spontaneity in his presentation (AR 16). The ALJ found Dr. Thompson's limitations inconsistent with McLachlan's intact thought processes (AR 16). The ALJ gave more weight to the opinion of Dr. Heil, the state agency reviewing psychologist, whose opinion he found more thorough and consistent with the medical record and McLachlan's daily activities (AR 16). He noted that McLachlan testified that his medication had resulted in more effective control of his mental health and that his interpersonal relationships were better (AR 16). Finally, the ALJ observed that McLachlan had not undergone more aggressive mental health treatment, such as inpatient hospitalization or emergency room treatment (AR 16).

We reject McLachlan's argument that the ALJ improperly used his "lay opinion" in rejecting Dr. Thompson's opinion. To the contrary, the ALJ fulfilled his obligations under the regulations and compared his opinion in light of his own examination and other evidence in the record. McLachlan claims that the ALJ's inability to understand what he saw as an "ambiguity" in the opinion required him to seek "answers" to his questions from Dr. Thompson. *Plaintiff's Brief* p. 15. The ALJ however, apparently felt that the record was sufficiently developed for

purposes of ruling on McLachlan's claim. Section 416.912(e)(1) provides that the Administration will take action to re-contact medical sources and obtain additional medical information where the existing evidence is insufficient to determine whether a claimant is disabled. 20 C.F.R. § 416.912(e)(1). We believe the ALJ could permissibly render a decision based upon the evidence in the present record without further development and, therefore, find no error in the ALJ's failure to re-contact Dr. Thompson for further clarification under the circumstances here.

McLachlan also argues that the ALJ erred in relying on the opinion of Dr. Heil, the state agency reviewing psychologist, in rejecting Dr. Thompson's opinion. Dr. Heil opined that McLachlan was capable of understanding and remembering instructions, concentrating, interacting with others, and adapting to changes in the workplace, and concluded that he was able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments (AR 219). We note that it is long-settled that the findings of a non-examining physician may be substantial evidence defeating contrary opinions. *Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (ALJ did not err in rejecting opinion of treating physician in favor of opinions from state agency physicians, where treating physicians' opinions were conclusory and unsupported by the medical evidence).

Here, McLachlan claims that since Dr. Heil did not have the benefit of subsequent treatment notes, his opinion is entitled to less weight. The later medical evidence consisted of Dr. Su's psychological evaluation, and treatment notes from Stairways dated July 16, 2003 through April 2, 2004. Although these records were not reviewed by Dr. Heil, they were reviewed by the ALJ, who specifically discussed these records in fashioning McLachlan's residual functional capacity (AR 16). Even if the state agency reviewing psychologist had had the benefit of these later records, they do not support McLachlan's contentions that his limitations prevented him from performing substantial gainful activity. While Dr. Su assessed McLachlan with a GAF score of 50, this was at the initial evaluation and prior to any treatment.

Moreover, on mental status examination, Dr. Su found his speech coherent and goal-directed, his long-term and short-term memory was intact, and he was of average intelligence with fair insight and judgment (AR 253). Treatment records reveal only two visits after Dr. Su's initial evaluation wherein McLachlan complained of depression, but medication changes were made to address his complaints (AR 248-249). We therefore find no error in this regard.

McLachlan further claims the ALJ erred in relying on his "sporadic and transitory" activities in rejecting Dr. Thompson's opinion. It is well established in this Circuit that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity" nor does "sporadic and transitory activity ... disprove disability." *Smith v. Califano,* 637 F.2d 968, 971 (3rd Cir. 1981). Here, however, the ALJ did not rely solely on his daily activities in finding that he had the capacity to engage in a limited range of light work. In fashioning his residual functional capacity, he also relied upon the lack of findings from Dr. Thompson's mental status examination, the state agency psychologist's opinion, the lack of aggressive treatment, and the fact that McLachlan testified that his symptoms were better with medication (AR 16). The ALJ's evaluation was completely consistent with the requirement that in determining a claimant's residual functional capacity, an ALJ must consider "all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence." *SSR* 96-5p (1996), 1996 WL 374183 *5. We therefore find this argument meritless.

Finally, McLachlan claims that the ALJ failed to accurately portray his limitations in his hypothetical posed to the vocational expert. The law is well established that "[w]hile the ALJ may proffer a variety of assumptions to [a vocational] expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual

11

physical and mental impairments." *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984). In other words, "[a] hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3rd Cir. 1987), *citing, Podedworny, supra. See also Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150 (3rd Cir. 1983). However, "[a]lthough hypothetical questions posed by an ALJ to a vocational expert must reflect a plaintiff's impairments, an ALJ need not include every unsubstantiated assertion of limitation in his hypothetical question." *Wilson v. Sullivan,* 1991 WL 311910 at *4 (W.D.Pa. 1991), *citing Chrupcala, supra.* Rather, he must include "only those limitations supported by objective medical evidence." *Id.*

McLachlan contends that the ALJ's hypothetical erroneously failed to include the limitations set forth in Dr. Thompson's opinion, namely, that he was unable to interact with supervisors, deal with work stresses, remember, understand, and carry out complex, detailed or simple instructions, maintain personal appearance, behave in an emotionally stable manner, and relate predictably in social situations. Because we have already determined that the ALJ's rejection of Dr. Thompson's opinion was supported by substantial evidence, it was not error for the ALJ to reject the expert's testimony on this issue. In any event, the ALJ accommodated McLachlan's functional restrictions by restricting him to work which consisted of simple, routine, repetitive tasks with one- or two-step instructions performed in a low stress environment, with nor more that occasional contact with the public, co-workers, and supervisors (AR 300).

## IV. Conclusion

Based upon the foregoing reasons, the Commissioner's final decision will be affirmed. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX MCLACHLAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 05-164 Erie |

### ORDER

AND NOW, this 7th day of February, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 8] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 11] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Alex McLachlan. The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>
United States District Judge

cm: All parties of record.